IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2018

**STATE OF TENNESSEE v. JACK AUSTIN**

**Appeal from the Criminal Court for Shelby County**
No. 15-04179     Chris Craft, Judge

_____

**No. W2017-02042-CCA-R3-CD**

_____

On July 19, 2017, the Defendant, Jack Austin, was convicted of aggravated robbery, a Class B felony. The trial court sentenced him as a Range I, standard offender to eight years and six months at 85% in the Department of Correction. The Defendant argues on appeal that the evidence is insufficient to sustain his conviction. He additionally argues that the trial court imposed an excessive sentence by misapplying an enhancement factor. After thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Mark Bowman, Memphis, Tennessee, for the appellant, Jack Austin.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abby Wallace and Jose Leon, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On August 27, 2015, a Shelby County grand jury indicted the Defendant and co-defendant for aggravated robbery. Following a jury trial, the Defendant and co-defendant were convicted on July 19, 2017. We now review the facts relevant to this appeal.

At trial, Deana Jeffries testified that she was working at Dollar General on January 23, 2015, when a man wearing a mask and brandishing a gun entered the store through the front door. She stated that she could tell he was a man by his voice when he "[t]old [Ms. Jeffries] to go behind the register and open the register." The man was wearing a black shirt, black pants, black shoes, and black ski mask, and Ms. Jeffries therefore did not see his face. She testified that she was five-feet, ten-inches tall, and the man was "a tad taller" than her. Ms. Jeffries "never had a gun pointed to [her] face" before and had a hard time opening her register, and the man told her to "hurry up." Once she opened the register, the man handed her a "white grocery . . . plastic bag" and demanded she put the money from the register into the bag. She stated that he then ran out of the store. Ms. Jeffries' co-worker, Walter Taylor, then helped her lock the front doors while they waited for police to arrive.

Mr. Taylor also testified at trial, stating that he was working in the back of the Dollar General store on January 23, 2015, when he "heard a woman scream, and [he] heard someone say, 'Get down on the ground.'" After realizing the store was being robbed, Mr. Taylor ran into the parking lot through an emergency exit and called 911. He further testified that while in the parking lot, he saw a "van or a truck, SUV type vehicle" on the street with its headlights on and was "already . . . running." He then saw a person wearing all black run toward the vehicle and get into the passenger seat, and the vehicle "sped off back into Waverly Plantation[,]" a "big subdivision[,]" via Waverly Farms Road, though Mr. Taylor did not see the man's face. He further stated that although he did not see how many people were in the vehicle, there had to be at least two people because the vehicle left "immediately" after the man got into the passenger seat, such that there was insufficient time for the man to get into the passenger seat, climb into the driver seat, and drive off.

Officer Sharif James, employed by the Shelby County Sheriff's Office, testified that he was one of the officers who responded to Dollar General following the robbery on January 23, 2015. He gathered information from Ms. Jeffries and Mr. Taylor and learned that the man was "wearing a black top with a hood on it, black pants . . . black shoes[,]" had taken "approximately $207" from the register, and had gotten into a "light-colored either truck or van or SUV" seen heading into Waverly Plantation. Officer James used this information to advise others to be on the lookout ("BOLO") for the suspect and vehicle. He testified that there were only two roads that led in and out of Waverly Plantation.

Officer Heidi Moulder, employed by the Shelby County Sheriff's Office, testified at trial that she heard the dispatcher give details of the robbery at the Dollar General and decided to patrol one of the entrances of Waverly Plantation with her partner, knowing other officers were already at the only other entrance into the neighborhood. She testified

that she saw a light-colored van run a stop sign in the neighborhood "at a high rate of speed," and she proceeded to initiate a traffic stop of the vehicle, which continued for "approximately 100 feet" before stopping. Officer Moulder then approached the passenger side of the vehicle while her partner, Officer Billy Gray, approached the driver side. She testified that the passenger seemed "very nervous," and she found "a handgun inside of a do-rag in the glove box visually." She further observed "through the window . . . a pair of tennis shoes and other dark clothing that were given out in [the] BOLO[.]" The clothing was later determined to be "a black hoodie turned inside out, a pair of black pants and a black pair of shoes with a pink stripe on the bottom, and a completely covered skull mask[,]" and a white plastic grocery bag was found amongst the clothing. Officer Moulder also patted down the passenger, whom she described as "approximately six-foot tall[,]" and found "approximately $207 in cash . . . in his right front pocket." At trial, she identified the Defendant as the passenger and the co-defendant as the driver of the van.

Officer Billy Gray, employed by the Shelby County Sheriff's Office, gave testimony similar to Officer Moulder's. He stated that they arrived at Waverly Plantation "pretty quickly" after the robbery and stopped the van after observing it run a stop sign, and he spoke with the driver while Officer Moulder spoke with the passenger, during which he discovered the driver had a suspended driver's license. He and Officer Moulder found black clothing in the van, and he testified that the passenger and driver both appeared to be between six-foot and six-foot, two-inches tall. Rochelle Cooper, a criminal investigator with the Shelby County District Attorney General's Office, also testified at trial regarding the co-defendant's driving history. The Defendant elected not to testify on his own behalf.

Following the close of all proof, the Defendant was convicted of aggravated robbery. At the sentencing hearing, the State pointed out that in the Defendant's presentence report, his mother stated that he "doesn't attend school and get [sic] high all day long." The report also showed inconsistencies with the Defendant's self-reported employment and education and his actual records. The trial court found the existence of one enhancement factor, namely that the Defendant had a previous history of criminal convictions or criminal behavior, based on his previous conviction for possession of marijuana and his admitted marijuana use. The Defendant also noted that he had other pending criminal cases in the trial court. The Defendant argued that the court should consider that he wanted "to be a better role model for [his children]" as a mitigating factor. At the end of the sentencing hearing, the Defendant was sentenced to eight years and six months in the Department of Correction.

## ANALYSIS

The Defendant argues on appeal that the evidence is insufficient to sustain his conviction for aggravated robbery based on the witnesses' inability to identify him. He further argues that the trial court erred in applying the enhancement factor of prior criminal history and criminal behavior based on his misdemeanor marijuana possession conviction and his admission of prior marijuana use. The State responds that his conviction is sustained by circumstantial evidence, and the record demonstrates that the trial court properly weighed the criminal history and criminal behavior enhancement factor in sentencing the Defendant to six months more than the minimum sentence. We agree with the State.

## I. Sufficiency of Evidence

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Dorantes, 331 S.W.3d at 379.

To sustain the Defendant's conviction, the State had to prove beyond a reasonable doubt that he committed aggravated robbery. As is relevant to the facts of this case, aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. §§ 39-13-401(a), -402. The Defendant does not challenge the specific elements of aggravated robbery or allege that the robbery was not committed; instead, he contends that the State failed to prove his identity as the perpetrator.

Although neither Ms. Jeffries nor Mr. Taylor saw the perpetrator's face, Ms. Jeffries was able to describe the clothing the perpetrator was wearing and his height. Mr. Taylor was able to describe the getaway vehicle that the perpetrator got into, and testified that it would have been impossible for the perpetrator to get into the passenger's seat and then switch to the driver's seat based on the time if took the vehicle to take off. Officer Moulder testified that she and her partner stopped a vehicle matching the description Mr. Taylor gave in the same neighborhood that he saw the vehicle go toward. The neighborhood had only two entrances, and Officer Moulder and Officer Gray arrived there soon after the robbery. Officer Moulder further testified that they found approximately $207 in the Defendant's pocket, the same amount stolen from Dollar General, and a gun hidden in the glove compartment. Further, Officer Gray testified that

they found black clothing and a white plastic grocery bag matching the description that Ms. Jeffries gave of the perpetrator and the bag, and the Defendant was the same height as the perpetrator. At trial, both Officer Gray and Officer Moulder were able to identify the Defendant as the passenger of the vehicle they stopped. The jury was also able to view the store's surveillance videotape and make its own determination of how recognizable the man in the video was based on his clothing. Though circumstantial, we conclude that there was enough evidence in the form of testimony from the Dollar General employees and the officers, as well as the security footage, to sustain the Defendant's conviction of aggravated robbery. Viewed in the light most favorable to the State, a rational trier of fact could have found that the Defendant committed aggravated robbery. The Defendant is not entitled to relief.

## II. Sentencing

Under the 2005 amendments to the Sentencing Act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating

factors, and the sentencing decision of the trial court will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." State v. Bise, 380 S.W.3d 682, 709-10 (Tenn. 2012). Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701. Moreover, a trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Bise, 380 S.W.3d at 706. Accordingly, we review the length of the sentences ordered by the trial court under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

At the sentencing hearing, the trial court briefly misspoke regarding the Defendant after the State confused the Defendant and the co-defendant. However, the trial court correctly referenced the Defendant and his presentence report in applying the enhancement factor of his previous history of criminal convictions and criminal behavior. See Tenn. Code Ann. § 40-35-114(1). The court based this determination on the Defendant's previous marijuana possession conviction and admitted marijuana use, though the trial court stated it did not give the factor significant weight. Though the Defendant argued that he did not want to be a "career criminal" so that he could be a role model for his children, the trial court declined to apply that as a mitigating factor. The Defendant also argued that his misdemeanor conviction and prior marijuana use should not have been applied as an enhancement factor, and he should have been sentenced to the minimum eight-year sentence. In sentencing the Defendant, the trial court reasoned:

> I find [the] enhancement factor that he has a previous history of criminal convictions or criminal behavior. He has this marijuana conviction and also admits, freely admits to smoking marijuana. So I don't give a great deal of weight to that enhancement factor because I have only one misdemeanor conviction.
>     . . . .
> The mitigating factor about his children and his allocution about wanting to be there for his kids, looking at his Presentence Report he smokes [marijuana] all day. He dropped out of school. . . . Doesn't work. Doesn't go to school. Basically smokes [marijuana]. . . . So although he does have children, I really cannot figure that that's mitigating.
>     . . . .
> So for that reason I'm going to show [the Defendant] sentenced to eight years and six months in the Department of Correction at 85 percent parole

- 7 -

eligibility. The marijuana offense and the smoking marijuana in general, that criminal behavior is good for six months.

The sentencing range for aggravated robbery, a Class B felony, committed by a Range I, standard offender is between eight and twelve years. Tenn. Code Ann. § 40-35-112(a)(2). The record reflects that the trial court properly considered the enhancement and mitigating factors, applying the Defendant's past criminal history and criminal behavior as an enhancement factor and finding no mitigating factors. Accordingly, the trial court sentenced the Defendant to eight years and six months, six months beyond the minimum sentence in his range. Id. Although the Defendant argues that the enhancement factor should not have been applied, he fails to recognize that he has a prior criminal conviction, period, and the trial court has discretion to take that into consideration and impose a sentence within the applicable range. Again, our standard of review is abuse of discretion with a presumption of reasonableness. After thorough review, we conclude the record supports the trial court's sentencing determinations. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE